versus the Small Business Administration 25-10205. Absolutely. Mr. Webner here for the appellant. Ms. Moyle here for the appellee. Yes, Your Honors. Mr. Webner. May it please the Court, my name is Dale Webner of Miller & Webner in Fort Lauderdale. It's my honor to represent the appellant, Novelle. It's my honor to be here, and I thank you for that opportunity. I'll try to answer your questions. I've already noted you have some very good ones, though. Let me start by telling you, I'm not here to read, but I want to just touch on a couple sections of the statute and other documents that really are the essence of my argument. First, of course, is the loan application itself. This loan application uses the very same words from the loan application, that is, average monthly payroll, and it defines that as payments that are made. If I believe, though, that the statute is, I won't necessarily use the word inconsistent, but maybe not entirely in line with the loan application, we would look to the statute and not the words in the loan application, right? Well, I think you look at the whole statute and try to reconcile all the words. Agreed, in the statute, though, not in some document that some functionary drafted during the midst of COVID. Well, I think it's a little more than a document. The people that are applying for a second draw PPP loan, that's what they look at. What do I do? I think if we were in contract land and we were talking about estoppel or things like that, then I think looking at the loan application would be very helpful to you. In the land of APA, where we're looking at whether something is an arbitrary or capricious interpretation of a statute or whether a reading of a statute or application of it is contrary to law, it seems to me that we have to look at the law. Yes, and I was getting to that. I just started with the loan application. I know, and I just want to get us right to where we need to be. Right, but I think the loan application is also important. For the lay people out there trying to decide, what do I do? How much do I get? Well, I'm certainly lay, so tell me. Okay. Well, then let's go on to the statute then, which you're more interested in and the definition, which this court in Cohen and the Supreme Court in Kurtz declared to be virtually conclusive. It also uses the same language. It uses the same words from the loan application, namely, what are payroll costs? It tells us again, just like the loan application, it tells us the payroll costs are also compensation that is paid, I'm quoting, or the obligation to pay compensation, and that's not all. We can also go to the forgiveness section of the statute. Let me ask you about that piece of your argument, though. I'm not sure that that might not hurt you more than it helps you because it seems to me to suggest that when Congress wants to use a phrase that means obligation to pay, it says obligation to pay. Well, that's what it said, or the obligation to pay compensation. Right, but that's not the language used in the operative provision here. I'm sorry? That's not the language used in the operative provision here in 636A.37c.i, right? You mean the loan formula? Right. In the payroll costs definition, you're right. It says in little double A, paid or the obligation to pay. That suggests to me that when Congress knows how to use a phrase of art that means obligation to pay, when it means obligation to pay something other than paid, and here it used it, and in 636, blah, blah, blah, it didn't. Well, it uses both. The compensation that's actually paid or the obligation to pay, that is incurred, and that's what was happening at the time. This is 2026. Let's go back to 2021 when the second draw loans came about. You had a year of COVID. There were businesses. Let's just talk about restaurants that had to eat. Many of them couldn't pay. I mean, the purpose of the statute wasn't to... That's an interesting thought, and a colleague of ours shared that thought, but doesn't the statute cover that situation? In other words, what the statute says is you can actually choose at the election of the entity, let me finish, the election of the entity, what year you want to look at. You can either look at the last 12 months, and for some folks, like a restaurant, no money was coming in, and so they had nothing to go out, and so that would be unfair to them. Or you could look at calendar year 2019 before anyone in America heard of COVID or coronavirus or anything else, when money was flush and money was coming out. And so by doing that, doesn't the statute solve the problem that you're talking about? Well, I don't disagree with what you just said in the sense that I never understood why 2019 was one of the permissible years. I think it's exactly what we've just solved it. No, I don't think so. What I was about to say is, and you used the example of... Maybe I said restaurants, but you recognize exactly what was happening at the time. The reality, why we had this statute was there were restaurants that had no customers, had no income, but had employees, and they wanted to keep those employees. And some of those owners reached in their own pocket and took out money and either paid those employees in full or in part, or did not pay those employees but told them that I'm going to keep you on. And that's where the CARES Act stepped in and said... And that's why it's called the PPP. It's not the Paid Protection Payroll Program. It was the Payroll Protection Program. If you paid or if you obligated yourself to pay those employees that you didn't lay off. Here's the problem though, and the District Court pointed this out. This is an original thought of mine, but it requires that there be an average total payment that is what's looked at in either the last 12 years or calendar year 2019. And payment, the definition of that is clear. And that requires... The District Court looked at blacks. I think that's a fair one to look at. Performance of an obligation by delivery of money or some other valuable thing, acceptable, impartial, or full discharge of an obligation. Alright, well two things. Respectfully, I don't think you're bound by what the District Court said. I think we're here de novo. What's the proper interpretation of this statute? And you may agree with me or disagree with me, and you may disagree with counsel, but it's your independent duty to do that respectfully. But as to the word payment, all these other provisions, and I still had one to go, they use the word payment. They say payment that's paid or payment that's incurred. And that's the loan application and that's also... But payment means that it's total payment for costs incurred or paid by the entity during the last year. In other words, that the money that's obligated and paid out has to be during the relevant year. That's right. And the second draw, if you look at the loan application in this case, wasn't until 2021. There was a first draw, and that's not an issue here. A year later, we had all these businesses that had employees and they couldn't pay them. They incurred the obligation. They kept them on. And that's where the second draw stepped in. We're going to forgive those loans. But counsel, you're missing that the formula allows you to choose a year where money actually did come out. It allows you to look at 2019 for money that came out. So it accounts for what you're talking about is during the coronavirus, there may have been businesses that just didn't have cash flow to be able to pay out their employees. Well, you might be right, but who would have used the year 2019? It says you're going to use the one that's the most. What do you mean who? If any rational business would calculate what would I get over the last 12 months, what would I get under 2019, and use the one where I get the most? Let's face it. Am I right? I'd have to hear that again. Would a rational actor do what I just suggested? Would you please repeat? Yeah. I would do a calculation, a rough on the napkin. Here's how much I paid out in the last 12 months multiplied by 2.5. Here's what I paid out in 2019 multiplied by 2.5. Which one's more? I'm going to pick that one. Right? That's what a rational actor would do. Which one gives you the more loan? Of course. All of which were well under the cap. Right. Yes. That's what one would do. But it still doesn't explain the use, the definition of payroll costs, which is the term in the loan formula. It doesn't explain that. And I was about to get to the discussion of forgiveness in that statute. It's in the subsection 837J. And forgiveness says that when you apply for forgiveness, you're entitled to use expenditures that, I think I'm quoting, expenditures paid and costs incurred. Now, that can apply to both payroll and it can also apply to the expenses that are also permissible in a forgiveness application. So the statute is just replete over and over the definitions, the forgiveness, the loan application with the recognition of what the reality was at the time, which we've already discussed and I don't think you'd disagree with it. People could not pay their employees and the statute stepped in to provide them with forgivable loans so that they would not lay off employees, they would retain them. Under the obligation to pay them. Can I ask you maybe a structural question that to me suggests that the correct interpretation of the statute is the one that Judge Luck has been pursuing? You mentioned the first draw. The first draw provision, which is, let me make sure I've got my, this is 636A36E1. It refers to the average total monthly payments by the applicant for payroll costs incurred during a one-year period. Just incurred, right? Second draw, average total monthly payment for payroll costs incurred or paid by the eligible entity during the one-year period. So doesn't that suggest that the second draw provision is simply an effort to broaden the scope of reimbursable loans to include those not only incurred, which was first draw, but incurred or paid? Well, that's right. That's exactly our argument. It includes both. But it's sort of like the incurred piece of it looks back, not forward. That's the structural inference that I think you draw from. The second draw loan in 21, our application was January 21. You are looking back. You're looking at 2020 when COVID was strongest. It was, you know, it was an economic and human disaster in this country and they needed to do something and that's what COVID did. Counsel, though, how do you get around the temporal limitation? I mean, it says that the payment that we're looking at has to be during either the one-year period or in 2019. If payment does mean what I think it literally means, which is the payment of money and that payment of money has to be during this period of time, how do we get around that? Well, we used 2020. We had paid compensation. We had incurred compensation. And by the way, one can incur something during a year that is paid out also. So in other words, I incurred the obligation in January. I paid out in February. Well, that's not what the statute says. You can make that argument, but that's not what the statute says. It says payment and it sets the temporal provision of the payment and then it says it either has to be incurred during that year or paid out during that year even if it was not incurred during that year. The statute doesn't answer that question. And I'll admit, it's not a model of clarity. Remember. I don't understand why would I just said it doesn't answer. It says, it uses the term payment, right? We understand what payment means. It means it has to come out. It tells us when it has to come out during the one year period before the date on which the loan is made.  And then it tells us when that payment has to be triggered to two things. Either incurred or that which was paid out during that year that had not been incurred during that year. That's right. And that's what happened. It's what he paid the previous year in 2020. Yeah, but he didn't pay out the obligation that was incurred during the year. So in other words, it either has to be incurred and paid during the year or payment made during the year or it has to be paid out during the year even though the obligation wasn't incurred during the calendar year. Your Honor, I'm using my time. You can answer Judge White's question. Okay, well, I kind of think I'm sounding like a broken record. I'm relying upon the ...  Well, no. Not just the application. I think that's very important because that's what the small business owner sees. But I'm also relying upon the statutory definitions and also the discussion of forgiveness. It includes both expenditures made     and costs incurred.  Thank you. All right, Ms. Moyle, let's hear from you. Good morning, Your Honors. Maureen Moyle on behalf of the government of Appalachia. Judge Newsom, I'd like to directly address your point about the difference between the first draw statute and the second draw statute because I think that has resulted in the problem that we're hearing about today. The first draw loan statute solely uses        the word incurred and then it went on to define during the one-year period on the date before the loan is made. That was passed March 27, 2020, again, during the throes of the pandemic. The first draw statute was extremely broad in what businesses were eligible, what the maximum loan draw was. It was really an effort to get money into the hands of Americans very quickly. When we go to the second draw loan statute, which was passed December 27, 2020, we see that Congress is simply copying the words from the first draw loan statute but it's recognizing that, as Judge Luck pointed out, there are two separate time periods now for when the business can elect to use, essentially to get the maximum draw as any reasonable person would. When it added the definition, when it added and paid to the statute, it was not intending to contrast incurred. Frankly, pun intended here, hindsight is 20-20 and what it should have done was move the two separate subsections to track the exact same language from the first draw statute and say, incurred during the year prior or paid during 2019. That would encompass what Judge Luck has recognized as obligations that were incurred in prior years but were paid out in 2020. I actually think . . . 2019. Maybe I wasn't very clear. I would have thought my question to your adversary would be a softball to you. I think this is kind of the tiebreaker. I think the statute effectively says what you just said would have been in hindsight a better way to structure it. It seems to me that Congress just broadened . . . In the first draw provision, it was an incurred only sort of trigger and here, it's an incurred or paid so you can . . . It can be incurred in this year or paid in this year but incurred in the prior year. That seems to me to be sort of by inference the way the statute reads most naturally. It's a mess of a statute but that to me is kind of a tiebreaker for the interpretation that Judge Locke has been pursuing. Just to briefly respond to that, I don't think that that would be inconsistent with all the other timing provisions and the restrictions that went along with the second draw loan statute. It seems to me that the statute has a couple of requirements to it. In other words, the better way to look at it is look at it sort of as elements. One is, it requires    payment. I mean, so there actually has to be payment during the relevant year or in 2019. Then it says it has to be for payroll cost. In other words, it can't be payment for my Porsche or for something else. It has to be to meet payroll. Then the third thing is it has to be for an obligation that was incurred during that year and remember that it has payment or it has to be for something that was paid out but not incurred. In other words, those are separate categories. For example, let's take the business that we have here. Under a cash method of accounting, the way it would work is you wouldn't book it at the time that the obligation was incurred. You would incur it at the time that they actually paid out. If one of these insurance companies for a storm that happened five years ago finally paid out, that would have been an obligation that was incurred to the agent five years ago but in fact was paid out then. That would have to encompass something different than incurred because incurred would have been only for obligations that actually were incurred at that time. By expanding it, which I agree with completely with my colleague, by expanding it, you're incorporating not just those obligations that happened in the last 12 months but you're incurring obligations that were actually paid out for payroll even though they came for some long period of time before. Which is exactly Noble's business model. Yes, it would encompass that. Why does payment have to mean it seems to me that whichever way we pick at this fork in the road you have to do violence to some of the words. Payment for being interpreted only as something you've already paid which is what we've been doing so far converts the words into total monthly payment for payroll costs paid. I did the ellipsis over incurred. So you're doing violence in that regard. You're not I think implicit in what you're saying is we have to basically look at the surplusage canon and say it's not inexorable because we need to say that payment can only mean something that's already payment for can only mean something that's already been done. Because if you view payment for as no you have a total monthly payment for a whole bunch of things and you have to show that average there is at least a dictionary definition that says that payment for can be synonymous with an invoice. It's what you're going to have to pay. Why isn't that right? Because if you do that definition of payment for you don't do violence to any of the words and it's completely consistent with Judge Newsom's pointing out the fact that 36 just has incurred in it. If I can just piggyback so you can answer the question it's not really just a dictionary definition I mean it's sort of like ordinary understanding as well it could be. You know I mean somebody might ask me what's my average monthly payment for my mortgage for the rest of the year? About $3,300 a month. What's my average monthly payment for when my student loan debt whatever my car note. That's not irrational to think of that as a going forward. I don't think it's irrational but I don't think it would give the Judge Luck quoted Black's I would quote Merriam-Webster's payment means the act of paid and essentially I don't think that looking towards forward-looking obligations that were beyond the covered time period which is a defined term in the statute was what Congress intended. And I don't think that when you consider how Congress amended essentially copied the first draw loan statute to the second draw loan statute I don't think it does violence to the statute itself. I do think each term and meaning plays a part and that incurred is not superfluous. Perhaps there is some overlap when they added the words and paid but it was not meant to restrict as you said Judge Leibowitz to things that have only been paid. It was to broaden what Judge Luck said encompass payroll that may have been paid out in 2019 that was incurred in years prior. I want to just talk about what my friend across the aisle here said. Sorry to jump in but otherwise without that what you'd have is you could have a company that paid out $1.5 million in payroll but because they didn't incur those obligations let's say $500,000 of it at the time Congress would not have maximized the amount of money that the company would have paid out. In other words it wouldn't have backed up that complete amount if you didn't have that or paid in there. Because if you just had incurred in a business like we have before us it could be that only a million was incurred and $500,000 of it was incurred three years before and was simply paid out to the company and passed through to the agent at that time. Without that change. That's correct. Again the second draw loan statute was meant to really restrict what types of businesses were eligible it reduced the number of employees, it reduced the maximum loan amount by a significant amount. They also had to prove a specific 25% reduction in gross receipts. This was no longer essentially money to whoever needed it, a sole proprietorship. They had to prove that their business was affected by the pandemic. And finally most critically as opposing counsel pointed out in subsection J sub 4 there is a specific limitation on forgiveness that 60% must be used for payroll costs during the covered period which is the defined term to mean February 15, 2020 and ending on June 20, 2021. It would be in Congress for Congress to as Noble wants to say, receive funds in this way, expect them to be paid out 60% by June of that year by June of that year when they haven't actually paid them out. Can I ask another question? Your opposing counsel keeps coming back to the definition of payroll costs. Sure. Is he right that the definition of payroll costs includes obligations to pay? Yes. Well, the section heading is shall not include. Right. In other words, it doesn't include that at all. What it says is payroll costs are things we would mostly associate with payroll costs. Salary, wages, compensation, tips, all of that kind of stuff. Vacation payment, health insurance. And then it says that term, payroll costs, shall not include and then it says compensation is paid or obligated to be paid. It has to do with excess payment, right? So the concept of obligation to pay has nothing to do with the affirmative definition of payroll costs. It is only in the negative definition of payroll costs. That's absolutely right. And I want to just point to the affirmative definition of payroll costs. The very first substantive section, the sum of payments of any compensation. And then it goes on to define what those payments commonly are that we know. In other words, money that's going out for salary. In other words, unlike the mortgage, which is an affirmative sort of bill going there, we can't divorce the payment from what we're talking about, which is a payroll cost. Correct. Which deals with the sum of payments that are made for salary, tips, vacation, allowance, dismissal, etc. Right? Correct. Counsel, let me ask you this. I know, I don't know it as well as these two, but even I know that after Loper-Bright, your brother is right that we are not required to defer to the SBA in any way. My question to you is, I couldn't really find it in the record. I just want to hear it from you to make sure. The SBA is taking the position that since enactment, it has consistently, without exception, applied forgiveness under this interpretation of payment for. In other words, 37C has been paid out by the SBA without exception as to exclude incurred costs. Is that right, first of all? And secondly, is that anywhere in the record? Because I think that's part of our duty under cases like Skidmore, that if SBA is taking a position that it's consistent interpretation of these words since enactment means something, that is entitled to Skidmore weight. I just want to make sure I give you the opportunity to perfect the record, because I couldn't find it and I think it's hanging as an implicit statement by the SBA. I would not feel comfortable using the language that your Honor proposed, that it's absolute. I don't have information on how the SBA has interpreted this statute beyond the record that I have in the case before. Because that's part of the problem, right? Part of the problem for Noble is we're a specialized business. We're a specialized business that's only going to get paid out, to use Judge Luck's hypo, we're only going to get paid out a month, a year from now. And the SBA comes back and is entitled to Skidmore consideration by us of, hey, look, this has massive impacts if we give this to Noble. I just want to make sure, has the SBA already had Nobles before them and paid out in a way that, shall we say, windfalls certain businesses, but has cut Noble off at the pass? That's what's troubling me. I'm speaking only for myself. I would give serious consideration. Do I give Skidmore weight to the SBA during a time of crisis saying, 37C, this is how we have always implemented it. And that's what I'm looking for, counsel, is some sort of something you can point me to. Your Honor, I cannot point you to anything. I would just note that these are statutes that were passed, you know, nine months apart during the throes of the coronavirus pandemic. The way this loan program was set up was first of its kind, you know, super unique in terms of allowing all these additional eligible lenders to come in and participate with the SBA in order to get money in the hands of the doors of Americans very, very quickly. You know, I think there are many things that could have been improved or perhaps different oversight mechanisms, but no, I don't have that before me. One thing I just want to mention finally with my remaining time is that, and I think this goes, Judge Luck, to your point, is that if we remove the word payment from the statute, we could have employers who essentially say, I'm going to incur the obligation to pay my employees up to the $100,000 salary cap by the end of June 30, 2021. And under Noble's interpretation of the view, they would be allowed to do that, and that would, like you said, result in a windfall to all these employees who weren't actually paid those amounts, weren't expecting to. We need to actually look at what the district court said, which is that the inclusion of the word incurred in this compensation does not include money that has not been paid out, or will not be paid out within the covered period. There's also some documentation issues, but given the statutory, we believe the statutory language is clear, we would just ask that you affirm. Okay, very well. Thank you. Mr. Webner, you've got three minutes remaining. A few points. I've got to admit, again, your questions are very good. Some of them are very difficult. This is a new statute, complex area, done very quickly to try to solve an economic and human disaster, and that may have given rise to some of the, perhaps, ambiguities in the statute, but only between the word payment and incurred. And I'd say again that the statute is just replete with what incurred means. Secondly, a lot of the questions were actually factual in nature. They weren't addressed in the . . . they were good questions, but they were factual in nature, not addressed by the district court, not even addressed at the administrative level, including Judge Leibowitz, your question, that I can recall, so I agree with counsel on that. The statute is not making factual distinctions between, well, what did this business do? What did that business do? Were no bails incurred? Wages really incurred? How far back did they go? We didn't deal with those issues, below or at the administrative level. And I don't think we can deal with them now. They're good questions, but never asked. This is the first time these questions have been asked. Finally, I've got to go back to the reality issue, because I think some of the questions avoid the actual reality on the ground in January 2021. But the statute does. It recognizes that some of those businesses, whether restaurants or no bails or car dealerships, they paid all or some of their compensation. Some of them had no business, had no income, could not pay them, but still obligated themselves to pay their employees. And that's what the definitions say. That's what the loan application says. That's what the forgiveness section of the statute says. It's going to cover you for what you paid or what you obligated, out of the goodness of your heart, maybe, to pay employees. So, however you review this going forward, I think you need to keep that reality in mind and respectfully request that you do. I think that's all I have, unless you have more questions. Just in terms of the relief, I think the summary judgment should be reversed. I think the summary judgment should be granted or instructions for the district court to grant the summary judgment in favor of no bail, but also instructions for them to recalculate or calculate for the first time what the actual loan amount should be, based upon your determination of what the word incurred. Thank you very much. Thank you both. That case is submitted. Fourth and final case of the day.